## LAFFIN V. BENDIX AVIATION CORPORATION

[No. 17,482. Filed May 24, 1946. Rehearing Denied June 14, 1946. Transfer Denied October 31, 1946.]

*Seebirt, Oare & Deahl,* and *Warren E. McGill,* all of South Bend, for appellant.

*Henry L. Humrickhouser,* of South Bend, for appellee.

HAMILTON, J.—On November 18, 1941, the appellant was in the employment of the appellee at an average weekly wage in excess of $30. Appellant was employed as an assembler on pneudraulic landing struts, and on said date he sustained a personal injury to his right eye by reason of an accident arising out of and in the course of his employment, which injury was caused by a piece of emery striking the right eyeball, thereby resulting in a traumatic cataract. The injury and resulting cataract produced and caused a gradual loss of vision in the right eye until on October 5, 1945, the cataract had reached its maximum degree of density and appellant had no vision in said right eye, except light perception.

Appellant filed his application Form 9 for adjustment of compensation under the Indiana Workmen's Compensation Act, § 40-1202 *et seq.,* Burns' 1940 Replacement, on April 28, 1945. To this application appellee filed a special answer, alleging that appellant's claim was barred by § 40-1224, Burns' 1940 Replacement, § 16,400, Baldwin's 1934, because the application had not been filed within two years after the date of the accident, to wit: November 18, 1941.

The cause was heard by a single member of the Industrial Board who rendered an award denying compensation. Appellant filed his petition for review of the award by the Full Industrial Board. On January 15, 1946, the Full Industrial Board made an award in which it found that on November 18, 1941, appellant sustained a personal injury by reason of an accident arising out of and in the course of his employment with appellee, of which accidental injury appellee had knowledge and

did furnish some medical attention. The Board further found that appellant did not suffer any temporary total disability as a result of said injury; that following the accidental injury there was a gradual loss of vision of appellant's right eye; that on May 19, 1942, the appellant had 20/400 or 3.3% vision in his right eye; that in March, 1945, appellant had no vision, except light perception, in the right eye; that the loss of vision in the right eye was directly traceable to the accidental injury sustained on November 18, 1941; that appellant's right to compensation because of said injury accrued on May 19, 1942. Upon such findings of facts the Full Industrial Board made an award that appellant take nothing by his Form 9 application, filed April 28, 1945.

The errors assigned are that: (1) The award of the Full Industrial Board is contrary to law; and (2) the award is contrary to the evidence.

This assignment of error requires that we examine the record to ascertain whether there is any substantial evidence in the record to sustain the findings of the Full Industrial Board that appellant's cause of action for compensation because of the accidental injury to his right eye accrued on May 19, 1942.

Appellant's application alleged a permanent loss of sight in the right eye and was based upon the provisions of Clause (f) of § 31 of the Indiana Workmen's Compensation Act, § 40-1303 (f), Burns' 1940 Replacement, § 16,407, Baldwin's 1934, which reads as follows:

"For injuries in the following schedule the employee shall receive in lieu of all other compensation, on account of said injuries, a weekly compensation of fifty-five [55] per cent of his average weekly wages for the period stated for said injuries respectively to wit: . . .

"(f) For the permanent loss of the sight of an eye or its reduction to one-tenth of normal vision

*with glasses,* one hundred and fifty [150] weeks. . .
(Our italics.)

The evidence is without conflict and consists of the testimony of the appellant and one Dr. V. E. Harmon, an eye specialist who had examined appellant's eyes upon five different occasions.

Dr. Harmon testified that he examined the appellant on August 29, 1939, and found that he had normal vision in both eyes—20/15, each eye; that the second examination occurred on August 24, 1940, and the same results were found. The third examination was on May 19, 1942. At that time the appellant had vision of 20/400 in the right eye and 20/15 in the left. He had a cataract in the right eye. Dr. Harmon made a note that the cataract had developed during the past year. Dr. Harmon stated that, in his opinion, the cataract in the right eye of appellant was caused by trauma. The fourth examination was made on May 6, 1943, and approximately the same findings were made on that date as those of May 19, 1942. On May 6, 1943, the cataract was not quite as dense as it was at the last and final examination. In 1943 the appellant could read big letters and in 1942 he could read an outline at 20 feet distance, which he could not do on the date of the last examination, *viz.*: October 5, 1945. The last and final examination was made October 5, 1945. On that date the cataract was very dense, and the appellant had no vision in his right eye, except light perception. The cataract had reached its maximum degree of density and a stage of permanency. The witness testified that the cataract was as dense on October 5, 1945, as it would ever be and that there was no chance of improvement of vision in the right eye without surgery; that glasses would not improve the vision in the right eye as it existed on October 5, 1945. Dr. Harmon testified further

that the permanent condition in appellant's right eye as he found it on October 5, 1945, had come about sometime between the date of the examination on May 6, 1943, and October 5, 1945; that this change had been a gradual one; that prior to the cataract's having reached its maximum degree of density the vision of the patient would appear to vary from day to day. That as of October 5, 1945, the appellant had only light perception vision in his right eye, and it was a blind eye as far as seeing anything is concerned.

On cross-examination Dr. Harmon testified as follows:

"Q. This was an industrial blind eye in May 1942, wasn't it?

"A. Yes; in 1942 he had twenty four hundredths vision.

"Q. And that is industrially blind, is it not?

"A. I wouldn't know whether that is considered industrially blind or not. Of course Laffin has a 3.3% vision.

"Q. He had 3.3%?

"A. I don't know what your law calls an industrial blind eye."

The appellant testified that he had noticed an apparent change in the vision of his right eye during the period between May, 1943, and October 5, 1945; that at times he could read large letters close, such as headlines in a newspaper or large advertisement signs; that in December, 1944, he could see bright colors with his right eye; that as of October 5, 1945, he could only distinguish light out of his right eye.

The record does not disclose whether any of the tests made by Dr. Harmon, as heretofore stated, were made with or without glasses. Therefore, we assume that all

of said tests were made without glasses. *Cunya* v. *Vance* (1935), 100 Ind. App. 687, 691, 197 N. E. 737.

It is firmly established by the decisions of this court that the word "injury" as used in § 40-1224, Burns' 1940 Replacement, § 16,400, Baldwin's 1934, means compensable disability, and does not refer to the date of the accident from which the "injury" or compensable disability resulted, and under said section a claim for compensation may be filed at any time within two years after an injury becomes compensable by resulting in disability. *S. G. Taylor Chain Co.* v. *Marianowski* (1932), 95 Ind. App. 120, 182 N. E. 584; *Muehlhausen Spring Co.* v. *Szewczyk* (1937), 104 Ind. App. 161, 163, 8 N. E. (2d) 104; *Standard Brands, Inc.* v. *Moore* (1943), 114 Ind. App. 500, 505, 51 N. E. (2d) 865; *Farmers Mutual Liability Co.* v. *Chaplin* (1943), 114 Ind. App. 372, 51 N. E. (2d) 378.

The "compensable injury" for which compensation was sought in the instant case, as alleged in appellant's Form 9 application is "permanent loss of sight or loss of more than ninety per cent vision in right eye."

Referring to Clause (f) of § 40-1303, *supra,* we find it provides for compensation "for the permanent loss of the sight of an eye *or its reduction to one-tenth of normal vision with glasses."* (Our italics.) Applying the language of the statute to the uncontroverted evidence in the record, we find that, according to Dr. Harmon's testimony, appellant was permanently blind in the right eye on October 5, 1945, and that this condition had become permanent sometime between May 6, 1943, and October 5, 1945. We have been unable to find any evidence in the record to establish the fact that appellant's vision in his right eye was reduced to *"one-tenth of normal vision with glasses"* on May 19, 1942,

or at any other date. In the absence of some evidence upon this subject, we cannot say that glasses would, or would not, have improved appellant's vision in the right eye prior to the time the cataract reached its maximum density and became permanent. Dr. Harmon did testify that as of October 5, 1945, glasses would not improve vision in appellant's right eye but there is no evidence in the record upon that subject covering the period from May 19, 1942, to October 5, 1945.

Appellant's application for compensation was filed April 28, 1945, which was within a two-year period between May 6, 1943, and October 5, 1945, during which time Dr. Harmon testified that the cataract in the right eye had gradually reached its maximum degree of density and had become permanent, and appellant had a "blind eye as far as seeing anything is concerned."

In view of the fact that Dr. Harmon stated that he did not know what constituted an industrially blind eye under the law and the further fact that there is no evidence that any test was ever made with glasses and the further fact that there is no evidence to show whether glasses would or would not have improved the vision in appellant's right eye during the period between May 19, 1942, and October 5, 1945, we hold that there is no substantial evidence in the record to sustain the finding of the Full Industrial Board that on May 19, 1942, appellant's vision in his right eye was "reduced to one-tenth of normal vision with glasses," and therefore, appellant's cause of action accrued as of that date. There is no evidence in the record to establish that appellant had sustained a permanent loss of vision of the right eye as of May 19, 1942, or at any particular date prior to October 5, 1945.

For the reasons stated, the award of the Full Industrial Board is contrary to law and must be reversed.

The award of the Full Industrial Board is therefore reversed and said cause is remanded for further proceedings not inconsistent with the views stated in this opinion.

DRAPER, J., dissents; CRUMPACKER, J., concurs in dissent.

NOTE.—Reported in 66 N. E. (2d) 625.

### DISSENTING OPINION

DRAPER, J.—The accident resulting in the injury to appellant's eye occurred on November 18, 1941. As a result the appellant had but 3.3% vision in the eye on May 19, 1942. On April 28, 1945, nearly three years after discovering that fact, the appellant filed his application for compensation for loss of the eye. The board denied compensation because the application was filed too late.

Although this court is firmly committed to the doctrine that where the disablement or compensable injury does not occur simultaneously with the accident producing it the claim for compensation may be filed within two years after the resulting injury develops or becomes apparent, the claim is barred by the statute unless filed within the latter time. Any other holding would completely nullify the provisions of § 24 of the Act.

The burden of proving that the claim was filed within the statutory period is upon the claimant. In a very few jurisdictions it is held that the limitation of time for filing a claim under the Workmen's Compensation Act is not jurisdictional, but is a defense which may or may not be asserted by the defendant. The overwhelming weight of authority, however, is that the limitation of time for the filing of a claim under the Act is jurisdic-

tional and is a condition precedent to the right to maintain the action. See Annotation 78 A. L. R. 1294. Indiana has taken its place with the majority, and it is the law in this state that the provision requiring the filing of a claim within two years is not an ordinary statute of limitations; that it affects the *right* and not the *remedy;* that the condition is one attached to the right to sue at all; and that the filing of a claim within time is an indispensable condition to the claimant's right to proceed. *Keser v. U. S. S. Lead Refinery* (1928), 88 Ind. App. 246, 163 N. E. 621.

It was, therefore, incumbent upon the appellant to prove that, although the accident occurred more than two years before he filed his claim, his application was nevertheless timely filed; or in other words, to prove that the injury first became compensable within two years preceding the filing of his claim. This burden rested upon him. The appellee was not required to disprove it, nor to file any answer setting up such a defense.

An eye reduced to one-tenth of normal vision is an industrially blind eye. *Eureka Coal Co.* v. *Melcho* (1927), 85 Ind. App. 552, 154 N. E. 774. It was industrially blind on May 19, 1942. For the purposes of the Compensation Act it could deteriorate no further. The appellant proved that the accident had produced such an eye more than two years before he filed his claim, and I believe he filed his claim too late.

It is true there is no evidence that the appellant did or did not wear glasses when he was examined on May 19, 1942. The evidence shows that he procured glasses, however, and I doubt whether the board could assume that he did not wear them. But any uncertainties in the evidence are chargeable to the appellant, for the burden of proof was upon him. If the board could

assume he did not wear glasses when examined, it could not further assume that had he worn them they would have improved his vision to any particular percentage degree. If he did not wear glasses when examined on May 19, 1942, and if glasses would have increased his vision to one-tenth of normal on that date and thus have avoided a medical finding that his eye was then an industrially blind eye, it was incumbent upon him to produce such proof.

The board was entitled to believe that the appellant made the best case he could. It was required to decide the case according to the evidence before it. It had no right to indulge in speculation, guess or surmise. The only proof before the board was that the eye was industrially blind more than two years before the claim was filed, and I believe the board reached the only conclusion possible to it.

I, therefore, think the award should be affirmed.

Crumpacker, J., concurs.

NOTE.—Reported in 66 N. E. (2d) 625.